## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MILLS CASHWAY PHARMACY, INC., a Louisiana corporation, individually and as the representative of a class of similarly-situated persons and entities, | ) ) ) ) |
| | ) No. |
| Plaintiff, | ) |
| | ) **COMPLAINT-CLASS ACTION** |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| PROFESSIONAL COMPOUNDING CENTERS OF AMERICA, INC, | ) ) |
| | ) |
| Defendant. | ) |

## CLASS ACTION COMPLAINT

Plaintiff, Mills Cashway Pharmacy, Inc. ("Plaintiff"), brings this action on behalf of itself and all others similarly situated and, except as to those allegations pertaining to Plaintiff or its attorneys, which are based on personal knowledge, alleges the following upon information and belief against defendant Professional Compounding Centers of America, Inc. ("PCCA" or "Defendant") after a reasonable investigation by counsel.

## PRELIMINARY STATEMENT

1.     The Telephone Consumer Protection Act, 47 U.S.C. § 227, prohibits sending any "unsolicited advertisement" by fax. 47 U.S.C. § 227 (b)(1)(C).

2.     On July 22, 2020, Plaintiff (a pharmacy) received an unsolicited advertisement on its fax machine from PCCA (a company that sells equipment,

devices, and materials to pharmacies). A true and correct copy of the fax is attached as **Exhibit A**.

3.      The fax advertised "The Summer Compounding Sale," stated that "One of PCCA's biggest sales of the year is going on now!" and detailed $1000 and $500 savings available when purchasing "Select NuAire® LabGard® Powder Containment Units," "OHAUS® Explorer Balances," or an "EXACT™ 50 Ointment Mill."

4.      PCCA did not have Plaintiff's prior express invitation or permission to send advertising material to its fax machine.

5.      PCCA's fax does not contain a compliant opt-out notice, so any "established business relationship" with an intended recipient would be irrelevant in this action. 47 U.S.C. § 227(b)(1)(C)(i)-(iii).

6.      Every unsolicited fax advertisement causes concrete harm. The sender uses the recipient's fax machine to deliver the sender's unsolicited advertisement. Fax recipients are a captive audience. Fax machines are left on and ready to receive authorized messages. A fax can be received only with special equipment connected to a 10-digit fax number. Maintaining a functioning fax number and fax machine costs money. If automatically printed upon receipt, as in the case of Plaintiff, an unsolicited fax automatically uses the recipient's paper and ink toner. Whether printed or not, however, every unsolicited fax imposes incremental, per-page costs

on its recipients. Every unsolicited fax interrupts the recipient's privacy and seclusion, and wastes their valuable time, because somebody must view the sender's message to discern its source, purpose, or nature. Every fax transmission traverses the regulated, public telephone lines. An unsolicited fax causes undue wear and tear on the receiving fax machine. During its transmission, an unsolicited fax might prevent the receiving machine from sending or receiving an authorized fax.

7.    The TCPA provides a private right of action and statutory damages of $500 per violation. 47 U.S.C. § 227(b)(3). The statutory damages can be increased to $1,500 per violation for knowing or willful violations. The Court may also grant injunctive relief.

8.    On behalf of itself and all others similarly situated, Plaintiff brings this action seeking statutory damages for each of PCCA's violations of the TCPA occurring within the four years before this action was commenced and continuing until the Court directs notice to the certified class, and injunctive relief.

**PARTIES, JURISDICTION, AND VENUE**

9.    Plaintiff, Mills Cashway Pharmacy, Inc., is a Louisiana corporation operating a pharmacy in Parks, Louisiana.

10.    Defendant, Professional Compounding Centers of America, Inc., is a Texas corporation with its principal place of business located at 9901 S Wilcrest Dr, Houston, TX 77099, and its registered agent at the same location.

11.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

12.     Personal jurisdiction exists over PCCA in Louisiana because it has committed tortious acts in the State by sending unlawful fax advertisements to Louisiana residents.

13.     Venue is proper in the Western District of Louisiana because Plaintiff received the unlawful faxes within this District and PCCA has committed statutory torts within this District.

### FACTS

14.     Plaintiff operates a pharmacy at 1027 Martin Street, Parks, Louisiana.

15.     According to its website, PCCA's mission is to "Support the creation of personalized medicine and innovative products that make a difference in patient's' lives" and they have "made it [their] business to support compounding pharmacists at every step."
https://www.pccarx.com/AboutUs/WhoisPCCA (last visited April 11, 2024).

16.     On July 22, 2020, Plaintiff received an unsolicited advertisement on its telephone facsimile machine, which was connected to Plaintiff's telephone fax number, (337) 845-5070. A true and correct copy of the advertisement is attached as **Exhibit A**.

17.     **Exhibit A** advertises the commercial availability or quality of PCCA's

property, goods, or services.

18.     **Exhibit A** advertises "The Summer Compounding Sale" and that "One of PCCA's biggest sales of the year is going on now!"

19.     **Exhibit A** states, "We're announcing a new equipment special every day this week."

20.     **Exhibit A** states, "More savings are coming Thursday and Friday!" and directs recipients to visit "bit.ly/pcca_tscs," a short URL that redirects to PCCA's website (https://pccarx.com/thesummercompoundingsale), "to get the details and shop & save all week long." (last visited April 11, 2024.

21.     The header at the top of **Exhibit A** includes the date and time of the fax transmission ("07/22/2020" "15:37") and a telephone number ("8008745760").

22.     In July 2020, 800-874-5760 was one of PCCA's telephone numbers.

23.     The fax indicates that PCCA sends "mass faxes." **Exhibit A** (top) ("to opt out of mass faxes, call PCCA 800.331.2498").

24.     The fax says, "To unsubscribe from faxes, please call 800.331.2498." **Exhibit A** (bottom right).

25.     In July 2020, 800-331-2498 was one of PCCA's telephone numbers.

26.     Plaintiff did not subscribe to receive faxes from PCCA.

27.     **Exhibit A** is a standardized form containing material that advertises the commercial availability or quality of property, goods, or services.

28.    PCCA sent **Exhibit A** to Plaintiff by facsimile transmission without Plaintiff's prior express invitation or permission.

29.    Plaintiff had no "established business relationship" with PCCA.

30.    An established business relationship between PCCA and one of the recipients of the fax would be irrelevant to PCCA's liability under the TCPA, because **Exhibit A** does not contain a compliant opt-out notice.

31.    Plaintiff and the other class members have no obligation to attempt to avoid receiving PCCA's unlawful advertising by fax. Their fax machines are ready to send or receive their urgent or confidential business communications, or private communications about patients or customers, not to receive PCCA's advertising material.

## **CLASS REPRESENTATION ALLEGATIONS**

32.    Plaintiff brings this action on behalf of itself and a class of all others similarly situated (the "class") initially defined as follows: "All persons and entities sent one or more mass faxes from 'PCCA' on or after May 16, 2020."

33.    The class includes all persons and entities that were faxed unsolicited advertising material from PCCA at any time after May 16, 2020, but excludes: (a) PCCA, any entity in which it has a controlling interest, PCCA's employees, officers, and directors, and PCCA's legal representatives, heirs, successors, and assigns; and (b) any Judge assigned to this action, and his or her immediate family.

34.    **Exhibit A** is a "form letter"-type solicitation.

35.    Plaintiff intends to discover and include within this case all unsolicited advertisements PCCA sent by fax.

36.    Plaintiff anticipates modifying the proposed class definition—including proposing subclasses if appropriate—after discovery about PCCA's fax advertising practices and targets.

37.    This action is brought, and may properly be maintained as, a class action under Fed. R. Civ. P. 23. The action satisfies Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements. Prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23(b)(1)(A). Common questions of law or fact predominate over any individual questions and class representation is the superior method to adjudicate this controversy, as required by Rule 23(b)(3).

38.    **Numerosity/Impracticality of Joinder:** On information and belief, the class includes more than 40 persons and is so numerous that individual joinder of its members is impracticable. **Exhibit A** is a form template, addressed to nobody, displaying PCCA's graphics and trademarks, and obviously sent to a list of targets. Plaintiff intends to discover the identities of the class members in PCCA's records or the records of third parties.

39.    **Commonality and Predominance:** There is a well-defined

community of interest and there are common questions of law and fact that predominate over any question affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

a.      Whether PCCA sent unsolicited advertisements by fax;

b.      Whether **Exhibit A**—and other, similar documents PCCA sent by facsimile transmission—contained "material advertising the commercial availability or quality of property, goods, or services";

c.      The manner and method PCCA used to compile or obtain the list(s) of intended recipients of its fax advertisements;

d.      The manner and method PCCA used to sent mass faxes;

e.      Whether PCCA obtained "prior express invitation or permission" to send advertising material by facsimile transmission;

f.      Whether PCCA included on the first page of its advertisement(s) a clear and conspicuous opt-out notice containing all required content;

g.      Whether the Court should award statutory damages to Plaintiff and the other class members;

h.      Whether PCCA violated the TCPA knowingly or willfully and, if so, whether the Court should treble the statutory damages; and

i.      Whether the Court should enjoin PCCA from faxing advertising material.

40.      **Typicality of Claims**: Plaintiff's claims are typical of the claims of the other class members because they were injured by the same wrongful practices. Plaintiff and the other members of the class received unsolicited advertisements sent by facsimile transmission. If Plaintiff prevails on its claims, then the putative class members will prevail as well.

41.      **Adequacy of Representation:** Plaintiff is an adequate representative of the class. Plaintiff's interests do not conflict with the interests of the class. Plaintiff has retained counsel competent and experienced in complex class action litigation, and TCPA litigation in particular, and Plaintiff intends to vigorously prosecute this action. Plaintiff and its counsel will fairly and adequately protect the interest of members of the class.

42.      **Prosecution of Separate Claims Would Yield Inconsistent Results**: Common questions of fact and law predominate. Separate adjudication of class member's claims would yield inconsistent and varying adjudications.

43.      **A Class Action is the Superior Method of Adjudicating the Common Questions of Law or Fact that Predominate over Individual Questions**: A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit because individual litigation would be

economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. There appears to be no other TCPA lawsuit pending against PCCA. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the class would be proper. Plaintiff envisions no difficulty in the management of this action as a class action.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

44.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

45.    Plaintiff brings Count I on behalf of itself and a class of all similarly-situated persons and entities.

46.    The TCPA provides in pertinent part as follows:

(b)  Restrictions on use of automated telephone equipment

   (1)   Prohibitions

      It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

                                    * * *

      (C)    to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless--

(i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;

(ii) the sender obtained the number of the telephone facsimile machine through--

(I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

(II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution, except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before July 9, 2005; and

(iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D),

except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E); or ….

47 U.S.C. § 227(b)(1)(C).

47.    The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

48.    The TCPA provides a private right of action as follows:

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

49. PCCA sent at least one unsolicited advertisement to Plaintiff's fax machine. **Exhibit A**.

50. An advertiser can fax an otherwise "unsolicited advertisement" to a person or entity with which the advertiser has an "established business relationship," but only if the advertiser includes on the first page of the advertisement a specific, clear, and conspicuous opt-out notice. 47 U.S.C. § 227(b)(2)(D); 47 C.F.R. § 64.1200(a)(4)(iii).

51. Plaintiff and PCCA did not have an "established business relationship" in July 2020.

52. The TCPA requires specific content on an opt-out notice. 47 U.S.C. § 227(b)(2)(D); 47 C.F.R. § 64.1200(a)(4)(iii).

53.    **Exhibit A** does not contain a compliant opt-out notice: (1) **Exhibit A** has no "clear and conspicuous" opt-out notice; (2) **Exhibit A** does not state that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request is unlawful; (3) **Exhibit A** does not identify a domestic facsimile machine number to which the recipient may send an opt-out request; and (4) **Exhibit A** it does not set forth the requirements of a valid opt request, including stating that a request not to send future unsolicited advertisements must identify the telephone number to which the request relates, a request must be made to the telephone or facsimile number provided in the opt-out notice, and that the opt-out request will be overridden by the person or entity providing express invitation or permission to send advertisements by fax.

54.    In the smallest font found on the page, **Exhibit A** states on its top, "To opt out of mass faxes, call PCCA 800.331.2498," and near its bottom, "To unsubscribe from faxes, please call 800.331.2498," but these words do not comprise a clear and conspicuous or otherwise compliant opt-out notice.

55.    Facsimile advertising imposes burdens on recipients that are distinct from those imposed by other types of advertising. If advertisers do not clearly and conspicuously provide the required opt-out content on their faxes, recipients are or may be unable to avoid the burdens imposed by this form of advertising.

56.    PCCA violated the TCPA by faxing advertisements to Plaintiff and the other class members without their prior express invitation or permission and, making any potential EBR defense irrelevant, without a compliant opt-out notice.

57.    PCCA is liable because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to and/or constituting the violation, the faxes were sent on its behalf, and/or under general principles of vicarious liability applicable under the TCPA, including actual authority, apparent authority, and ratification.

58.    PCCA knew or should have known that Plaintiff and the other class members had not expressly invited or given express permission to receive PCCA's advertising material by fax.

59.    The TCPA is a strict liability statute, so PCCA is liable to Plaintiff and the other class members even if its actions were negligent or well intentioned.

60.    PCCA's actions caused harm. Its fax ads invaded each recipient's statutorily protected rights to privacy and seclusion. The faxes caused Plaintiff and others to lose paper and toner. The faxes used Plaintiff's and the class's fax machines, increased the costs associated with operating and maintaining the fax machines, and otherwise wasted valuable resources. The faxes may have blocked or interfered with the sending and receiving capacity of the machines. The faxes necessarily wasted the recipients' valuable time, as each fax transmission they

receive must be viewed and inspected to ascertain its function or purpose.

61.     Plaintiff does not seek to recover for actual monetary loss. Rather, Plaintiff seeks an award of $500 in damages for each of PCCA's violations of the TCPA and does so on behalf of itself and the other recipients of PCCA's fax advertising.

62.     Further, Plaintiff requests trebling if the Court determines that PCCA's violations were knowing or willful. 47 U.S.C. § 227(b)(3).

WHEREFORE, Plaintiff, individually and on behalf of all others similarly-situated, demands judgment in their favor and against PCCA, as follows:

A.     That the Court determine and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award $500.00 in statutory damages for each of PCCA's violations of the TCPA's junk fax prohibitions;

C.     That, if it finds that PCCA violated the TCPA knowingly or willfully, the Court treble the statutory damages to $1,500 per violation;

D.     That the Court enter a permanent injunction prohibiting PCCA from sending any advertising material by fax without first demonstrating that prior express invitation or permission has been obtained or that the document to be sent by fax transmission includes the required opt-out notice; and

E.      That the Court award costs and such further relief as it deems just and proper under the circumstances.

Respectfully submitted,

MILLS    CASHWAY    PHARMACY,    INC., individually and as the representative of a class of similarly-situated persons,

By:      /s/*Blake R. David*
               One of its attorneys

Blake R. David
Broussard David & Moroux
557 Jefferson St.
Lafayette, LA 70501
Telephone: 337-233-2323
Email: Blake@BDM.law

Phillip A. Bock (*pro hac vice* to be submitted)
Bock Hatch & Oppenheim, LLC
203 N. La Salle St., Ste. 2100
Chicago, IL 60601
Telephone: 312-658-5500
Email: service@classlawyers.com